ALBANY,
Oct. 1836.

The People
v.
Dalton.

---

THE PEOPLE vs. DALTON.

A bar-keeper in an inn, entrusted to carry letters to and from the post-office, who fraudulently converts to his own use a letter inclosing money, given to him to carry to the post-office, is guilty of *embezzlement;* and to convict him it is not necessary to show that he *broke open* the letter or *fled* after the commission of the offence, or to show the *dissent* of his employer ; it is enough that there be a *fraudulent conversion,* and that being shown, a *felonious intent* is established.

A bill of exceptions lies only to bring up exceptions taken *at the trial* to the decisions of the court upon the evidence, or to the charge given to the jury ; it properly should contain no more of the facts which transpired at the trial than are necessary distinctly to raise the questions intended to be presented for review.

Exceptions not properly presented will not be regarded even in *criminal cases.*

The decision of a subordinate criminal court on a *motion in arrest* of judgment cannot be reviewed on a bill of exceptions.

Such court has not power to grant a *new trial* to a prisoner who has been convicted of *embezzlement.*

THE prisoner was convicted, at the Ontario general sessions, on an indictment for *embezzling* a ten dollar bank-bill enclosed in a letter entrusted to him to carry to the post-office. A traveller stopped at an inn kept by a Mrs. Mann, at *Geneva,* and gave the letter enclosing the bill to one *Franklin,* who had the principal management and superintendence of the house ; informing him that it contained money, and desired him to send it to the post-office. Franklin delivered the letter to Dalton, a *bar-keeper* in the house, to carry to the post-office, who took it, but did not deliver it at the post-office ; he knew it contained money. It was customary in the house for the bar-keepers to take letters to and bring them from the post-office. Mrs. Mann did not know of the custom, nor had she knowledge of this particular transaction. When the evidence was closed on the part of the prosecution, the counsel

ALBANY,
Oct. 1836.

The People
v.
Dalton.

for the prisoner requested the court to instruct the jury to acquit the prisoner on the ground that the offence as proved did not amount to the crime of *embezzlement.* The judges were equally divided in opinion upon the question, and of course the jury were not so instructed, and for the omission to charge as requested, the counsel for the prisoner excepted. The jury brought in a verdict of *guilty.* After the verdict was rendered, the prisoner's counsel moved *in arrest of judgment,* raising four distinct objections, all of which related to the evidence, and were founded on its insufficiency to establish the offence charged. The motion in arrest was denied, and the judges thereupon sealed a bill of exceptions, which was brought into this court by *certiorari.*

The case was submitted on written arguments by

*N. Parke,* for the prisoner.

*W. Hubbell,* (district attorney of Ontario,) for the people,

*By the Court,* Cowen, J. The exception taken to the omission of the court to charge the jury that the offence as proved, did not amount to the crime of *embezzlement,* seeks to draw the *whole case* into question, and is perhaps too broad to raise in proper form any point presented by the argument; but if it were in due form, the objections cannot avail. The statute is, that if any servant of any private person, &c. shall embezzle or convert to his own use, without the assent of his master or employer, any money, &c. which shall have come into his possession or under his care by virtue of his employment, he shall be punished in the same manner as a larcener of the like sum. 2 *R. S.* 678, § 59. It is contended for the prisoner that, to show an embezzlement or conversion within the statute, there must have been proof of breaking or opening the letter, or of flight, &c. It is perfectly clear that neither is necessary. A fraudulent conversion in any way is enough ; and there is no prescribed set of circumstances by which the fraud is to be made out. There is nothing in the objection that this conversion could not be said to have been " without the assent of his mistress," on the ground that Mrs. Mann had no actual

personal knowledge that the prisioner was ever employed in carrying letters; it is enough that she in truth gave no assent. That she gave any is not pretended; and it is obvious from the evidence that she knew nothing of the matter. The statute is "without the assent," &c. not *with the dissent.* The point presented seems to suppose some act of the master or mistress' mind necessary, or at least possible in respect to the crime. It is also objected that the letter did not come to the prisoner's possession by virtue of his employment, within the meaning of the statute. The contrary is clear. *People* v *Sherman,* 10 *Wend.* 278. It is said again, under this point, that Mrs. Mann had no knowledge of his ever being entrusted to carry letters. The answer is that Franklin, her general manager and agent, had so employed him. This was in effect her act; and his knowledge was constructively her knowledge.

The point made, that a felonious or criminal intent must be proved, is assented to by the district attorney, who properly insists that proof of a fraudulent conversion is establishing the felonious or criminal intent within the objections raised. Such conversion was abundantly shown. In short, the offence, as proved, is exactly within the statute. It is intended to provide for a fraudulent conversion of money or goods by a servant, when they are delivered to him as such, either by his master or mistress, or in their behalf, or by a stranger. That was but a breach of trust at common law, because the money or goods came to his hands by delivery. The statute intended to convert such a breach of trust into a crime.

As to the *motion in arrest* and the judgment of the sessions thereupon, there are two answers: 1. The matter is not properly here—a bill of exceptions can be taken only at the trial; and 2. Had the objections been properly raised and properly brought here, there is nothing in them. As to the first ground: a writ of error at common law could not reach any objection arising *dehors* the record, unless perhaps in the single case of diminution, or error in fact. For the right now so commonly exercised, of bringing up the merits from the trial by writ of error we are indebted to the statute, 1 *R. L. of* 1813, *p.* 326, § 6. It was brought down from the previous revisions,

and is almost an exact transcript from the old English statute of 13 *Edw.1, of Westminster* 2,*ch.*31. *See* 1, *Statute at large,* 190. Under this statute the exception was confined in practice not only to the trial, but almost exclusively to some point of law specifically raised there upon the evidence or the charge of the judge. The present revised statutes seem, through inadvertence or otherwise, to have omitted this old statute. They begin by assuming that there is such a statute, or something equivalent in the common law, and make full provision in respect to the practice of taking and disposing of the bill. 2 *R. S.* 422, §73 *to* 80 *inclusive.* The introductory language, however, fully recognizes the settled notion so long entertained while the old statute was in existence, that the taking of the bill was confined to the trial. That language will be found in section 73, and is thus : " In all cases where exceptions are allowed by law, *on the trial of any cause,* either party may make such exception *at the time of the decision complained of,*" &c. Exceptions in criminal cases are co-extensive as to subject matter, and no more, with those in civil cases, but are confined to the defendant. 2 *R. S.* 736. They were given in such cases, for the first time, by the present revised statutes, which provide that, " On *the trial* of any indictment, exceptions to the decision of any court may be made by the defendant, in the same cases and manner provided by law in civil cases,". &c. The statute then proceeds with some regulations adapting the bill to the peculiar forms of practice in criminal cases. 2 *R. S.*736, §21 *to* 27 *inclusive.* In no sense, then, with or without the old statute, can we notice, as a matter for a bill of exceptions, a motion made as this was said to be, in arrest of judgment ; but which was in truth a motion for a new trial, in an inferior court, introduced in the name of a motion in arrest. That court had no power to entertain a motion for a new trial. An inferior court of record may arrest the judgment, or render a judgment *non obstante veredicto :* but they cannot, without a special statute power, grant a new trial on the merits. The former is always founded on the record—the latter on the proceedings at a trial regularly brought on ; of course the restriction can not be avoided by misnaming the latter a motion in arrest.

Such matters ought not to be put into a bill of exceptions. But had the objections been properly raised and properly brought here on error, we should be obliged to disregard them, because they were unfounded.

In any and every view, the court below were right in over-ruling what was miscalled the motion in arrest. The true course would have been, to have disregarded it for want of jurisdiction. I ought not to let this occasion pass, without noticing that the office of the bill of exceptions has been here entirely mistaken in several particulars. First, the testimony for the people is detailed with great particularity, as if we were to judge of its weight and effect in establishing the leading facts on which all the questions of law were supposed to turn. There was no dispute about several of the main facts. When this is so, they should be stated succinctly as the effect of the proof. *Denison* v. *Seymour*, 5 *Wendell*, 103. So if there be a plain defect in the proof, which defect is the foundation of the point raised, that can be mentioned. If the point is to be made that the proof is legally sufficient to establish a fact assumed by the court, and put by them as proved to the jury, more detail is warrantable; and so if it be a question whether there be proof sufficient to carry the cause to the jury : but unless the facts relate to some legal exception properly taken at the trial, even the statement of them in the charge to the jury, and the commentaries upon the evidence made by the judge, may—nay, should be stricken out on settling the bill. *Ex parte Crane*, 5 *Peters*, 190, 197, *to* 200.

Had the points been distinctly raised at the trial as they are now presented in argument, the bill might have been somewhat abridged in its history of the people's case; though I admit not a great deal, if we allow full effect to the exception as taken, and hold the points to be all properly involved in the general motion made at the trial for instructions to acquit. A general objection of the latter kind, however, is hardly ever available in a bill. An objection usually arises, where the main facts are made out in proof, but there is some particular defect relied upon by counsel. This they are required to point out, because it may, on being mentioned, be at once obviated

by further proof. In this case, had the defect now mentioned, that the prisoner's *flight* was not proved, been objected, and thought material, it might, for aught we know, have been shown. So the want of personal knowledge in Mrs. Mann, that the prisoner was in the habit of carrying letters, and that he took this particular letter. So that a criminal intent was not shown, &c. It is extremely unsafe to allow this broad objection, founded on the whole case, as made at the trial, to be available here for the purpose of any specifications that the party may choose to make for the first time. Some material fact which was in truth proved at the trial, is many times omitted in the case, for the very reason that it appeared, and no objection was made. The true and the only course, in correct practice, is in the manner pointed out, to draw the mind of the court and the opposite counsel to that part of the case wherein the objection lies, and then let the bill furnish such evidence, or such want of evidence, as may be material to the objection; exhibiting the whole as briefly as may be warrantable, for a full understanding of the legal point. *Denison* v. *Seymour*, 5 *Wendell*, 103. The whole case, at least the whole evidence, can be rarely wanted in a bill of exceptions properly taken. *Whiteside* v. *Jackson*, 1 *Wendell*, 418. The presenting of the points is of course the peculiar office of the counsel; and if these be broad and indefinite, covering the whole case, it is seldom that the court below feels willing to disregard them, though obviously ill taken. They therefore go up with the writ of error, in their general shape, and a statement of facts proportionably full. Such a bill sometimes proves entirely unavailing, and often fails in what might otherwise have been most material, for the very reason that it seeks too much. I must not be considered allowing that there is, properly, an available exception in the bill now before us, though I have considered the specifications as they have been raised in argument. Even if there had been good ground of exception shown to us, I should have feared its failure, upon the manner in which the questions are presented. Aside from these no other point of law, nor any thing resembling it, was raised at the trial. The charge of the court was quite favorable to the prisoner; and of course no exception to that was

thought of; yet all the testimony on the side of the prisoner, directed exclusively to his character, and the credibility of one of the people's witnesses, is detailed. It was obviously useless for all the purposes of the bill, and should have been excluded in the settlement of it. Then comes what are called the proceedings on the motion in arrest, the utter irrelevancy of which I have before considered.

I am aware of the great difficulty of courts below in trimming the case down to the neat points which should always, if possible, be presented. There is a frequent anxiety on the part of counsel to place every thing in a bill which is at all favorable to their clients in any view, and between the fear of making the case come short of what it should be, and the great respect so properly entertained for the zeal of counsel, and the real indulgence due to them in the exercise of their arduous and useful office, there is every tendency to relaxation. In settling many of these bills myself, with a full understanding, as I thought, of the general rules upon which it should be done, I have yet constantly felt the difficulty of their application, from the causes mentioned, and others inherent in this branch of judicial business. I am, therefore, far from speaking in a spirit of censure, when I notice the irrelevant matter which has found its way into this bill. The whole occupies no very great space, and is least of all attributable to a desire in any one concerned to swell folios for the sake of fees. But it can be seen how easily the practice may be abused to a very inconvenient, not to say an oppressive extent, if the courts who are to settle these bills prefer leaving matter to stand, where there is a mere doubt of its relevancy, when it is their duty to repress every attempt at obvious redundancy. In the court of review the line of duty is plain. Exceptions not properly presented cannot be regarded, even in criminal cases, 2 *Chit. Gen. Pr.* 593, *and the cases there cited in note (e)*; and useless prolixity should be discouraged in every department of legal practice.

The sessions are advised to sentence the prisoner, if they have not already done so.