### STATE *vs.* JAMES A. TABERNER.

A statute provided that "Every officer, agent, clerk, or servant, or person to whom any
  money or other property shall be intrusted for any specific purpose, who shall embezzle or
  fraudulently convert to his own use, or shall take or secrete with intent to embezzle and
  fraudulently convert to his own use, any money or other property which shall have come
  into his possession, or shall be under his care or charge, by virtue of such employment or
  for such specific purpose, shall be deemed guilty of larceny, and may be tried, sentenced,
  and punished as for any other larceny."
*Held,* that under this statute any agent is punishable who has money in his possession, or
  which has come into his possession by virtue of his agency, if he embezzles or fraudulently
  converts it.
*Held,* further, that the statute applies to a case in which the agent gets the money by fraud,
  or before getting it has conceived the purpose of appropriation if the money comes into
  his possession by virtue of the agency.
*Held,* further, that an offence is punishable under this statute although on the same proof it
  might be punishable as larceny at common law.

EXCEPTIONS to the Court of Common Pleas.

An indictment was found against the defendant as follows :

" Providence Sc. At the Court of Common Pleas of the State of Rhode Island and Providence Plantations holden at Providence, within and for the county of Providence, on the first Monday of December, in the year of our Lord one thousand eight hundred and eighty two.

" The grand jurors of the State of Rhode Island and Providence Plantations, and in and for the county of Providence, upon their oaths present :

" That James A. Taberner, of Providence, in said county, yeoman, on the third day of February, in the year of our Lord one thousand eight hundred and eighty two, with force and arms at Providence aforesaid, in the aforesaid county of Providence, being then and there the clerk and agent of James Higgin and another, did then and there by virtue of his said employment have, receive, and take into his possession certain money to a large amount, to wit, to the amount of seventeen hundred dollars, and of the value of seventeen hundred dollars, of the property and money of the said James Higgin and another, the said James A. Taberner's employers, and the said James A. Taberner the said money then and there feloniously did embezzle and fraudulently convert to his own use, without the consent of the said James Higgin and another, the said James A. Taberner's said employers, whereby and by force of the statute in such case made and provided the said James A. Taberner is deemed guilty of larceny. And so the jurors aforesaid upon their oaths aforesaid do say that the said James A. Taberner then and there, in manner and form aforesaid, the said money, of the property and money of the said James Higgin and another, the said James A. Taberner's said employers, from the said James Higgin and another feloniously did steal, take, and carry away, against the form of the statute in such case made and provided, and against the peace and dignity of the State."

Preferred by Samuel P. Colt, Attorney General, and signed by fourteen grand jurors.

At the trial in the Court of Common Pleas the defendant excepted to certain rulings and refusals to rule of the presiding

justice.   The exceptions taken are recited in the opinion of the
court.

*November* 3, 1883.   DURFEE, C. J.   This is an indictment for
embezzlement.   It charges that the defendant, on February 23,
1882, at Providence, "being then and there the clerk and agent
of James Higgin and another, did then and there by virtue of his
said employment have, receive, and take into his possession cer-
tain money to a large amount, to wit, to the amount of seventeen
hundred dollars, and of the value of seventeen hundred dollars, of
the property and money of the said James Higgin and another,
the said James A. Taberner's employers, and the said James A.
Taberner the said money then and there feloniously did embezzle
and fraudulently convert to his own use," &c.   The case comes
here from the Court of Common Pleas, on exceptions.   The bill
of exceptions contains a report of the testimony given on the trial
of the indictment in the court below.   From this it appears that
the defendant was a clerk or agent of the firm of Higgin, Lloyd
& Co., manufacturers of chemicals, having their principal place
of business in Manchester, England, but also having a branch
of it in Providence, R. I., where the defendant and one John
O'Rourke were engaged in their service.   The goods came to
Providence from England by way of New York or Boston.   Those
which came by way of Boston were sent in bond consigned to
the defendant, the duties being paid in Providence.   The de-
fendant committed the alleged embezzlement by overstating the
amount of the duties, and so getting more than he needed for
their payment, and by appropriating the excess.   The moneys
used were checked out of the Jackson Bank, in Providence, where
the funds of the firm in Providence were kept, deposited in the
name of the firm.   It was only on the joint check of the defend-
ant and O'Rourke that the moneys of the firm could be checked
out of the bank, and the moneys alleged to have been embezzled
were so checked out, the signature of O'Rourke being obtained
by the defendant by representing to O'Rourke that the moneys
were needed for the payment of the duties.   After the evidence
was submitted, the defendant asked the court below to charge the
jury that if they found that the *deficit* in the funds of the firm
was occasioned by the defendant's appropriating to his own use

the difference between the amount checked out of the bank and the amount paid at the custom house they must find the defendant not guilty. The court refused the request, but did charge that if the *deficit* was occasioned by the defendant's appropriating the difference to his own use, he was guilty of embezzlement. The defendant excepted. The defendant likewise asked the court below to instruct the jury that if the defendant appropriated only the money he received on the joint checks, and paid all that was due at the custom house, the jury must find him not guilty. The court refused, but did instruct the jury to the contrary thereof, and the defendant excepted. The court further ruled, subject to exception, that the defendant could not be guilty of larceny of said funds, but if guilty of anything it must be of embezzlement.

The defendant contends that the possession of the bank was the possession of Higgin, Lloyd & Co., and that the defendant having obtained the money from the bank, beyond what was needed for the payment of the duties, fraudulently and *animo furandi*, was guilty of the common law crime of larceny, and therefore could not be convicted under the statute of embezzlement, the statute being passed to cover only such offences as cannot be held to be larcenies at common law.

The old English statutes of embezzlements were very strictly construed, the courts holding that no person could be convicted under them of embezzlement upon proof which would warrant a conviction of theft. The language of those statutes, however, was less comprehensive than the language of ours, and much more readily yielded to such a construction, if indeed the language of those statutes did not require it. The construction was also favored by the fact that the punishment of the two offences was not always identical. Mr. Justice Stephen, in his history of the criminal law of England, tells us that the construction led to a long series of cases elaborately distinguishing between embezzlement and theft. "They turn," he says, "upon discussions as to the nature of possession, which are as technical and unsatisfactory as all attempts to affix a precise meaning to a word which has no precise meaning must necessarily be." The result was to introduce into this branch of the criminal law a degree of intricacy and confusion which caused frequent failures of justice. We do

not think, therefore, that the English precedents, or the similar precedents from other States, considering the freer scope of our statute, are necessarily to be followed. Our statute enacts that " Every officer, agent, clerk, or servant, or person to whom any money or other property shall be intrusted for any specific purpose, who shall embezzle or fraudulently convert to his own use, or shall take or secrete with intent to embezzle and fraudulently convert to his own use, any money or other property which shall have come into his possession, or shall be under his care or charge, by virtue of such employment or for such specific purpose, shall be deemed guilty of larceny, and may be tried, sentenced, and punished as for any other larceny." [1] The obvious meaning is that any agent who has money in his possession, which has come into his possession by virtue of his agency, is punishable under the statute if he embezzles or fraudulently converts it. We do not see how the fact that he gets the money by fraud, or that, before he gets it, he has conceived the purpose of appropriating it, can take the case out of the statute, if the money so received can be held to have come into his possession by virtue of his agency. Take the case at bar. The agent here got the money by a fraud practised on a fellow agent, or in legal effect by fraud practised on his principal, fraud on the agent being the same in legal effect as fraud on the principal : but nevertheless the money came into his possession by virtue of his agency, for it was only because he was agent and asked for the money as such that he was permitted to have it. It is only by a resort to some super subtile refinement or hair splitting distinction, not countenanced by the statute, that this conclusion can be avoided. The only argument against the conclusion is that the defendant might be convicted on the same proof of larceny at common law. It does not seem to us that this argument should avail ; for it is not inadmissible to punish by statute what is already punishable at common law. Moreover the punishment is the same, and the offence is the same, namely, larceny, whether it be prosecuted as at common law or under the statute. The indictment, too, concludes with substantially the same allegations as are used in an indictment for larceny at com-

---

[1] Pub. Stat. R. I. cap. 242, § 16.

mon law, and no valid reason occurs to us why a conviction or acquittal under the statute cannot be pleaded in bar of any subsequent prosecution at common law.

The view which we have taken is not without precedent. In *The People* v. *Dalton*, 15 Wend. 581, a person specially employed to carry a letter which contained money, and which he knew contained money, to the post office, fraudulently converted it. The offence was held to be punishable as embezzlement under a New York statute, similar to ours, though, according to the English precedents, it was theft and not embezzlement. In *Lowenthal* v. *The State*, 32 Ala. 589, under a similar statute, it was held that a clerk who had converted a bill of exchange, which had been committed to him by his employer to get it accepted and return it, was punishable for embezzlement, although the offence was larceny at common law. The court said: " If it be objected that, under our construction, conviction for embezzlement may be had upon facts which constituted larceny at common law, we answer that, conceding it to be so, we know of no principle which denies to the legislature power to make such provision."

Our conclusion is that the exceptions must be overruled and the cause remitted to the court below for sentence.

*Exceptions overruled.*

*Samuel P. Colt*, Attorney General, for plaintiff.
*Edmund S. Hopkins & George J. West*, for defendant.