The State of Iowa v. Reid.

## THE STATE OF IOWA V. REID.

1. **Criminal law:** INDICTMENT: VENUE. The sufficiency of an allegation of venue in an indictment, against an objection taken after verdict, discussed and determined.

2. —— BURGLARY: BREAKING FROM OUTSIDE. In an indictment for breaking and entering a dwelling house *from the outside*, in the night time, it is not necessary to allege that any person was within the house at the time of the alleged breaking.

3. —— APPLICATION FOR CONTINUANCE. Application for continuance in criminal causes, not based upon the absence of witnesses, are addressed to the discretion of the court, and its ruling will be disturbed by the appellate tribunal only in cases of abuse.

4. —— EVIDENCE. The mere possession of property stolen when a burglary was committed, a short time after the commission of the offense, is not, alone, sufficient to make a *prima facie* case of guilt against the party in possession; but may be considered in connection with other circumstances as tending to establish guilt.

5. —— BREAKING. The pushing open of a closed door, with the intent expressed in the statute, is a sufficient breaking within the meaning of the law to constitute burglary.

6. —— GRAND JURY: TALESMAN. When all of the regular jurors are not in attendance, and the grand jury is completed by summoning talesman, the talesmen serve for the term; and if the jury is discharged and recalled during the term, they must be summoned with the other jurors impanneled.

7. —— RECALLING GRAND JURY. The District Court has power to recall a grand jury to pass upon offenses committed after their discharge and before the adjournment of the term.

8. —— PRACTICE. An objection to a grand jury should be taken before pleading.

*Appeal from Dubuque District Court.*

TUESDAY, JUNE 12.

BURGLARY. — Defendant was indicted jointly with Emerson, Green and Fields, at the February Term, 1865, of the Dubuque District Court, for burglariously, &c., entering, &c., in the night time, the house of one Bradley. At the August Term he was tried and convicted, sentenced to the penitentiary for the term of five years, and now prosecutes this appeal.

*W. J. Knight* for the appellant.

1. The indictment is bad, because it fails to lay venue to the offense. It reads: "The grand jury of the county of Dubuque, in the name and by the authority of the State of Iowa, accuse George Reid of the crime of burglary, committed as follows: The said George Reid, heretofore, to wit: on the night of the 5th day of March, A. D., 1865, * * * * the dwelling house of William L. Bradley, *there situate,* feloniously * * did break and enter * * * ." *Bell's case,* 8 Gratt., 604; *Jane* v. *State,* 3 Mo., 63; *State* v. *McCracken,* 20 Id., 412; *State* v. *Jackson,* 39 Maine, 295; *State* v. *Croghan,* 8 Iowa, 524; *Sears* v. *The State,* 4 Tex., 450.

2. The indictment is bad, because it does not contain an averment that some one was in the house at the time of the alleged breaking. Rev., 1860, § 4232.

3. The court erred in overruling the application for a continuance.

The affidavit shows that, prior to the time of making it, the prisoner had no counsel, had not been furnished with a copy of the indictment or of the minutes of the testimony taken by the grand jury, and that he was consequently unprepared with his case. Rev., §§ 4647, 4685.

It was no fault of the prisoner that he was not ready; he was in jail and was powerless. The court should have had him brought in at an earlier day, and have appointed an attorney to prepare the case. As it did not, it was wrong to force the defendant to trial, as was done. *State* v. *Trelock*, 1 Iowa, 575.

4. There is no rule of law making the possession of property stolen at the time a burglary was committed, and of burglar's tools, *sufficient to convict.* The instruction makes the whole case turn on these two circumstances. It ignores any other evidence that may have been in the case, and says to the jury, if you believe these two circumstances to exist, the defendant is guilty. They might have existed in the case, and yet from the other evidence the jury might have entertained a reasonable doubt of defendant's guilt. The instruction took away from them the consideration of the question whether they had a reasonable doubt of his guilt or not. The instruction, as given, was erroneous. *Ogetree* v. *The State*, 28 Ala., 702; 2 Metc. (Ky.), 438.

5. The charge of the court authorized the conviction of the prisoner without proof of time or place, and is therefore erroneous. *Farrel* v. *State*, 32 Ala., 557.

6. The court charged that "pushing open of a closed door" would be a breaking, and thus erred. "To open a door which is not fastened or latched is not a breaking." 2 Archbold Crim. Pl. & Pra.; Wharton Crim. Law, 512, 514.

There is no legal indictment in the case. It was not

found by a grand jury, and is consequently of no effect. Revision, 1860, §§ 4609, 4610; *Keithler* v. *The State*, 4 G. Greene, 292.

*F. E. Bissell*, Attorney-General, for the State.

1. The venue is sufficiently alleged.

2. Where a house is *broken* into and entered, it is burglary, though no one was in the house at the time. Rev., 1860, § 4232.

3. The court did not abuse the discretion vested in it when it overruled the motion for continuance. *The State of Iowa* v. *Cox*, 10 Iowa, 351.

4. There is no material difference between "such a doubt as men act upon in transacting the ordinary affairs of life," and that "the evidence must be such as they would act upon in a matter of the highest importance to themselves," and if it does not amount to this, there is a reasonable doubt of its sufficiency.

5. No objection was taken to the grand jury until the motion for new trial, filed August 21, 1865. That the grand jury were not properly constituted to find an indictment, is ground for setting aside the indictment, but it must be made before pleading or demurring. Code, §§ 4691, 4694.

WRIGHT, J. — To notice and discuss, at length, the several points made by the prisoner's counsel, in his very clear and succinct briefs, would unreasonably extend this opinion. They have all received our careful attention, and we propose to do no more than state briefly the law applicable to each.

1. CRIMINAL LAW: indictment: venue.

1. The indictment commences as follows:

The State of Iowa v. Reid.

"THE STATE OF IOWA
v.
WILLIAM EMERSON, GEORGE REID, } *District Court of the County of Dubuque.*
JAMES GREEN and CHARLES FIELDS.

·  "The grand jury of the county of Dubuque, in the name and by the authority of the State of Iowa, accuse William Emerson, George Reid, James Green, and Charles Fields of the crime of burglary, committed as follows: The said William Emerson, &c. (giving the other names), heretofore, to wit: On the night of the 5th day of March, A. D., 1865, about the hour of eleven of the clock in the night, of said day, the dwelling house of William L. Bradley, *there situate*, feloniously and burglariously," &c.

After the trial and verdict of guilty, defendant moved in arrest of judgment and for a new trial, because, among other things, the indictment failed to lay the venue, &c. And the sufficiency of the indictment as against this objection, when urged in arrest, is the first question discussed by counsel.

It must be admitted that in this respect the indictment is greatly wanting in that clearness and certainty which it is always desirable to find in such pleadings. And yet it seems to us that there need be but little difficulty in determining what was intended by the pleader. The words "*there situate*" must refer fairly and reasonably to the county of Dubuque, for that is the only place named in the preceding part of the indictment. True, the "State" is named, but rather as indicating the "*authority*" rather than a *place*. And in view of the liberal, and we may add just and reasonable provisions of our statute, as to objections of this kind, *urged after verdict*, we have but little hesitation in holding that the motion as to this cause was properly overruled. Rev., §§ 4659, 4660. It is impossible for us to see how defendant was or could be prejudiced in any of his substantial rights by the defect complained of; and if

VOL. XX.—53

not, then the statute is express that the trial, judgment or proceedings shall not be thereby affected. And see *State of Iowa* v. *Hessenkamp*, 17 Iowa, 25; *Same* v. *Baldy*, Id., 39; *Same* v. *Middleton*, 11 Id., 247; *Same* v. *Emeigh*, 18 Id., 123; *Same* v. *Seamons*, 1 G. Greene, 418; *Same* v. *Devine*, 4 Iowa, 443; *Hampton* v. *The United States*, Mor., 489; *State of Iowa* v. *Schilling*, 14 Iowa, 455; *Same* v. *Kreig*, 13 Id., 462; *Same* v. *Wood*, 17 Id., 18; *Same* v. *Carney et al.*, *ante*.

II. It was also claimed in the motion in arrest that the indictment was defective and no judgment could be ren-

2. — burglary; breaking from the outside.

dered thereon, because it failed to allege *that some one was in the house* at the time of the alleged breaking. The statute is: "If any person break and enter any dwelling house in the night time, with intent to commit the crime of murder, rape, robbery or any other felony; or·after having entered with such intent break any such dwelling house in the night time, *any person being lawfully therein*, such offender shall be punished, &c. § 4232.

Our opinion is that this averment is not necessary where the indictment charges a breaking and entering from the outside of any dwelling house. The first part of this section defines burglary as at common law, and under that it was not necessary that any person should be actually within the house at the·time the offense was committed. Whart. Cr. L., 1531, 1572, 1573; *Commonwealth* v. *Brown*, 3 Rawle, 207; *Rex* v. *Murray*, 2 East P. C., 496.

III. It is next claimed that there was error in overruling the application for a continuance. The indictment

3. — applications for continuance.

was found March 20, 1865. At the same term, the defendant appeared by counsel and plead "not guilty." At the May Term, he applied for a change of venue from the district on account of the prejudice of the judge, and from the county because of the

prejudice of the people, both of which were overruled. The cause then stood continued to the August Term, when the prisoner was brought into court, and, his former counsel refusing to act further, the court appointed W. J. Knight, Esq., who applied for a continuance, presenting, by the affidavit of defendant, certain reasons why he was thus unprepared to proceed with the defense. The appliaction was not based upon the absence of witnesses, but upon the general ground that the circumstances were such that the prisoner would suffer substantial prejudice if compelled then to go to trial.

In view of all the facts, we think the court might very consistently have sustained the motion. It was for the judge, however, to be satisfied that substantial justice would be more nearly obtained by allowing the same. And in a matter addressed so peculiarly to the discretion of the court below, we would not interfere without clear proof that this discretion had been abused. *State of Iowa* v. *Cox*, 10 Iowa, 351; *Same* v. *McComb*, 18 Id., 43; *Same* v. *Rorabacher*, 19 Id., 155. The case of *The State of Iowa* v. *Treelock*, 1 Iowa, 515, was decided upon its own peculiar facts, and differs widely from the one at bar. The defendant was not in the position of a party arraigned without counsel, for an attorney had appeared and taken several steps in the case months before he was required to go to trial. Then, as to his right to a copy of the testimony returned with the indictment, this testimony was always open to the inspection of himself and counsel. And he had the right to demand a copy, or his counsel had the privilege of taking the same. But a prisoner cannot delay the claim of this privilege, and by demanding it when called for trial insist, as a matter of right, that a continuance shall be granted until a copy is obtained.

IV. The defendant asked this instruction: "Where

goods are stolen in connection with a burglary, possession of such goods immediately after the burglary, without other evidence of guilt, would not be *prima facie* evidence that the possessor was guilty of the burglary." This was given with the following addition : " But if you find there is other evidence of guilty conduct in the case, besides the possession of the goods, such as that he had burglar's tools in his possession, or was acting with others, aiding and abetting them in committing the burglary, then such possession is *prima facie* evidence in connection with such further testimony, and sufficient to convict." And to this addition the appellant next objects.

4. —— evidence.

It must be admitted that the language of the entire instruction is wanting in the clearness and perspicuity usually characterizing the instructions of the court below ; and it is perhaps susceptible of a construction prejudicial to the prisoner. It, however, like all other parts of a record, must receive a natural and reasonable construction, and we are not at liberty to presume that the jury applied any other rule on considering this language. It is not fair criticism of the whole instruction to say that the jury was, under it, *bound to convict*, if they found that the prisoner had burglar's tools in his possession, and the stolen goods, immediately after the burglary. The language is, that if there was other evidence of guilty conduct, other than the possession of the stolen goods, *such as* the possession of burglar's tools, &c., then such possession (that is of the goods) is *prima facie* evidence in *connection with such further testimony*, and sufficient to convict. And certainly there can be no objection to the proposition that the jury *might* convict upon proof of such possession, with other evidence of guilty conduct, and especially if the prisoner " acted with others, aiding and abetting them in the commission of the burglary." And it seems to us this is all that is meant. The cases supposed by the judge of the possession

of burglar's tools, &c., are not stated as exclusive of all other facts, or as matters having in themselves conclusive weight, but rather as illustrative of the thought which he was then presenting for their guidance. This, we think, is clear enough from the language itself, and is made so by other parts of the charge. These are so lengthy as to forbid our giving them in full, or indeed any part of them. The rule that detached portions of an instruction or a charge are not to be singled out and subjected to a criticism or construction unwarranted by the other parts, is too well understood to need more than its statement. As to the instruction with the addition, see 1 Whart. Cr. L., 728, 729, and notes.

V. As to the breaking, the court charged, that "opening a closed door with the intent expressed in the statute, as by lifting a latch, turning a key in a lock, pushing open a closed door, or by pushing up a window, or in any other way, using any force to enter, is sufficient, and it is not necessary to show that a lock or other fastening was broken by violence." To this instruction it is objected, that it is not a breaking within the meaning of the law, "*to push open a closed door.*"

5. — break-ing.

The cases abound in many and very nice distinctions as to what will constitute an actual *breaking*, within the meaning of the law; and they are not in all respects consistent. That in this case the house was entered by some person or persons, and property stolen, there is no room for doubt under the testimony. And we think the testimony tends very strongly to show that the doors and windows were not only closed, but fastened, and that there could have been no breaking with a force less than raising a latch or turning a knob. But suppose the jury found that the prisoners, or some of them, entered by *pushing* open a *closed* door, was this sufficient to show a breaking? Under the authorities the

ruling is doubtful, but upon principle we believe it to be right. It will be observed that the instruction speaks of *pushing*, of pushing open, and that too, of a *closed* door. Take the case of raising a window, not fastened, although there was a hasp which could have been fastened to keep it down (*Rex* v. *Ryan*, 7 C. & P., 441); or where the prisoner entered by raising or pulling down the sash kept in its place merely by the pully weight. *Rex* v. *Haines*, R. & Ry., 451, And in principle we do not see why if these are recognized as instances of breaking, the pushing open of a closed door would not be equally so. And see *Rex* v. *Hall*, R. & Ry., 355; 2 East P. C., 487; *Rex* v. *Russell*, Ry. & M., 277; *The State* v. *Wilson*, Cox (N. J.), 430; *State* v. *Boon*, 13 Ind., 244.

VI. The objection that the charge authorized a conviction without proof of the time or place of the commission of the offense, is not sustained by the record. As to time or place, there seems to have been no difficulty under the proofs, and no question as to the sufficiency of the testimony in these respects, was raised or suggested at any time. Not even in the motion for a new trial and in arrest was such an objection stated. The case evidently turned upon other and controverted facts, and the failure to call the specific attention of the judge to these matters, the necessity for such proofs being obviously implied in what was said, is not an error justifying the reversal of the case.

VII. But one question remains, and that is the point made in the motion in arrest, based upon the manner of impanneling the grand jury. It seems that at the commencement of the February Term the grand jurors were called, and some being absent their places were filled by the sheriff as provided by section 4609 of the Revision. On the 22d of February, this jury submitted its final report and was discharged. On the 7th of

6. —— grand jury: talesmen.

March, the term still continuing, the court ordered the clerk to issue a *venire* commanding the sheriff to summon the grand jury, impanneled for the term, to meet on the 13th. The grand jury before discharged and thus convoked did meet and found this indictment, and were discharged on the 20th. Defendant was arrested on the 6th, was in jail on the 13th, and plead to the indictment on the 22d of March.

The objection is, that the court had no power to thus constitute a grand jury; that after their discharge they could not be again convoked for the term, and if so, that it was irregular and improper to allow the talesman to serve with the regular jurors, their duties ceasing entirely with their first discharge.

The law is, that persons selected to supply a deficiency in the requisite number of grand jurors, " serve only during the term at which they are summoned." § 4610. This implies that they *are* to serve, like regular jurors, during the term; but unlike those of the regular panel, their duties cease with the term. It then seems to us, if any of these jurors could be reconvoked, they all could; and, indeed, to have omitted any one in the *venire* would have been irregular. By such a course the court does not select or create a new body, or call men into the box of its own choosing, nor does it remove, reform or change the members thereof; but calls together the very body constituting the grand inquest for the term.

Had it the power, then, to recall this jury to consider and pass upon offenses committed immediately after their discharge and before the adjournment? It seems 7.——recalling grand jury. to us the power exists. The grand jury is a component part of the judicial machinery. It is summoned for the term, and the regular jurors serve for a year. The policy of the law is that persons charged with crime shall have speedy as well as fair and impartial trials. The court

possesses the power to call a grand jury together at a special term. § 2658. It is a court of general, original jurisdiction, in criminal as well as civil matters. § 2663 ; Const., art. 5, § 6. To hold that it may not, when the public exigency demands it, resummon the grand jury for the term after they have disposed of the business before them, and at the time demanding their cognizance, would strip it, as it seems to us, of a portion of its inherent power; a power essential to the administration of justice; a power as clearly deducible from those expressed and undenied, as any other which can be conceived.

But, aside from this, the objection, in our opinion, was not taken in time. It should, at least, have been made

3. —— practice. before pleading to indictment. *The State of Iowa* v. *Ingalls and King*, 17 Iowa, 8 ; *Same* v. *Howard and Cress*, 10 Id., 101 ; *Same* v. *Ostrander*, 18 Id., 435, and cases there cited; Rev., §§ 4691, 4693, 4694, 4852, 4859.

Affirmed.